## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RICK D. LANGE, as Chapter 7 Trustee of the Bankruptcy Estate of TierOne Corporation, <br><br> Plaintiff, <br><br> v. <br><br> KPMG, LLP; CHARLES W. HOSKINS; CAMPBELL R. MCCONNELL; GILBERT G. LUNDSTROM; JAMES A. LAPHEN; and EUGENE WITKOWICZ, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Case No. _____ |

## NOTICE OF REMOVAL OF CIVIL ACTION

Charles W. Hoskins, Campbell R. McConnell, Gilbert G. Lundstrom, James A. Laphen, and Eugene Witkowicz (together, the "Individual Defendants") pursuant to 28 U.S.C. § 1452(a), Federal Rule of Bankruptcy Procedure 9027(a)(1), and United States District Court for the District of Nebraska General Rule 1.5(a), hereby give notice (the "Notice") and remove this civil action from District Court of Lancaster County, Nebraska (the "State Court"), to the United States District Court for the District of Nebraska (the "Court").  In support of their right of removal, the Individual Defendants state:

1.      On June 24, 2010, TierOne Corporation (the "Debtor") filed a voluntary petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nebraska (the "Bankruptcy Court").  Such case is numbered 10-41974 (the "Bankruptcy Case").  That same day, the United States Trustee appointed Rick D. Lange as interim trustee of the Debtor's bankruptcy estate (the "Trustee").

2.      Each of the Individual Defendants was a member of the Debtor's board of directors.  On June 22, 2012, the Trustee commenced an action against KPMG, LLP and the

Individual Defendants (collectively, the "Defendants"), in the District Court of Lancaster County, Nebraska, Case No. CI-12-0002486 (the "State Court Action"). The State Court Action arises out of the Trustee's allegations that the Individual Defendants breached their fiduciary duties by allowing the Debtor to make certain construction and land development loans. Attached hereto as Exhibit A is the complaint filed in the State Court Action. Attached hereto as Exhibit B is the docket for the State Court Action.

        3.     The Individual Defendants have filed proofs of claim against the Debtor for indemnification, and the Trustee has filed a series of adversary proceedings to disallow or subordinate those claims.[1]

        4.     This Court may, upon removal, exercise jurisdiction over the State Court Action. 28 U.S.C. § 1452(a) provides, in pertinent part:

> A party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of [title 28]."

28 U.S.C. § 1452(a). Federal Rule of Bankruptcy Procedure 9027, which implements the bankruptcy-removal statute, provides, in pertinent part:

> The notice [of removal] shall be signed pursuant to Rule 9011 and contain a short and plain statement of the facts which entitle the party filing the notice to remove, contain a statement that upon removal of the claim or cause of action the proceeding is core or non-core and, if noncore, that the party filing the notice does or does not consent to entry of final orders or judgment by the bankruptcy judge…

Fed. R. Bankr. P. 9027(a)(1).

---

[1] The adversary proceedings brought by the Trustee in the Bankruptcy Court against the Individual Defendants are as follows: *Rick D. Lange v. Charles W. Hoskins*, Adv. No. 12-04060; *Rick D. Lange v. Campbell R. McConnell*, Adv. No. 12-04058; *Rick D. Lange v. Gilbert G. Lundstrom*, Adv. No. 12-04061; *Rick D. Lange v. James A. Laphen*, Adv. No. 12-04059; and *Rick D. Lange v. Eugen Witkowicz*, Adv. No. 12-04062.

5.      The State Court Action may be removed to this Court because the United States District Court for the District of Nebraska has jurisdiction over the claims and causes of action asserted therein pursuant to 28 U.S.C. § 1334(b) because the State Court Action is "related to" the Bankruptcy Case, a case under title 11 of the United States Code.  A civil proceeding is "related to" a bankruptcy case if the outcome of that proceeding "could conceivably have any effect on the bankruptcy estate" or "could alter the debtor's rights, liabilities, options, or freedom of action … and which in any way impacts upon the handling and administration of the bankrupt estate."  *Integrated Health Services of Cliff Manor, Inv. v. THCI Co., LLC*, 417 F.3d 953, 958 (8th Cir. 2005) (internal punctuation and citations omitted).

6.      A judgment against the Individual Defendants would impact the amount of funds available for creditors.  Further, pursuant to the Debtor's by-laws and the proofs of claim filed by the Individual Defendants, the Debtor must indemnify the Individual Defendants for liabilities incurred as a result of their actions as members of the Debtor's board.  Therefore, the State Court Action is "related to" the Bankruptcy Case because it will directly affect the amount of property available for distribution to the Debtor's creditors, and the Individual Defendants are entitled to remove the State Court Action to this Court pursuant to 28 U.S.C. § 1452(a).  The State Court Action also is related to because it asserts claims of the Debtor that are property of the estate.  Moreover, the Trustee's recently-filed Status Report, attached hereto as Exhibit C, described the State Court Action "as involving similar theories of recovery to those alleged" in the proceeding *Curtis W. Acton v. James A. Laphen, et al*., No. A10-4065-TLS already pending before this Court.

7.      The State Court Action constitutes a non-core proceeding, and each of the Individual Defendants consents to entry of a final judgment by the Bankruptcy Court.

*        *        *

3

8.      This Notice has been timely filed pursuant to Bankruptcy Rule 9027(a)(3)(A) in that it was filed within 30 days after the Individual Defendants received the complaint and summons issued pursuant to the State Court Action.

9.      Written notice of the filing of this Notice will be given promptly to all parties as required by Bankruptcy Rule 9027(b).

10.     A copy of this Notice has been contemporaneously filed with the Clerk of the State Court, as required by Bankruptcy Rule 9027(c).

[*Remainder of page intentionally left blank.*]

11.     Following removal, if not done so automatically, this Court should refer the above-captioned action to the Bankruptcy Court in accordance with United States District Court for the District of Nebraska General Rule 1.5(a).

Respectfully Submitted,

CHARLES W. HOSKINS, CAMPBELL R. McCONNELL, GILBERT G. LUNDSTROM, JAMES A. LAPHEN, AND EUGENE B. WITKOWICZ

Dated:  July 23, 2012

By:   /s/ J. Kevin McCall                          By:    /s/ Gregory C. Scaglione

J. Kevin McCall                                    Gregory C. Scaglione
James L. Thompson                                  David A. Yudelson
Douglas Sondgeroth                                 Koley, Jessen P.C., L.L.O.
JENNER & BLOCK LLP                                 1125 South 103rd Street
353 N. Clark St.                                   Suite 800, One Pacific Place
Chicago, Illinois  60611                           Omaha, NE 68124
TEL: (312) 222-9350                                (402) 390-9500
FAX: (312) 527-0484 (fax)                          (402) 390-9005 (fax)

*Attorneys for Defendants Charles W. Hoskins*      *Attorneys for Defendants Gilbert G. Lundstrom*
*and Campbell R. McConnell*                        *and Eugene B. Witkowicz*

By:   /s/ Thomas J. Kenny

Thomas J. Kenny
Edward G. Warin
Kathryn E. Jones
Kutak Rock LLP
1650 Farnam Street
Omaha, NE 68102-2186
(402) 346-6000
(402) 346-1148 (fax)

*Attorneys for Defendant James A. Laphen*

**<u>Exhibit A</u>**

# IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | |
|---|---|
| **RICK D. LANGE, as Chapter 7 Trustee of the Bankruptcy Estate of TierOne Corporation** | Case No. *0212-2486*     *St* |
| **Plaintiff,** | |
| **v.** | **COMPLAINT AND PRAECIPE** |
| **KPMG, LLP; CHARLES W. HOSKINS; CAMPBELL R. MCCONNELL;   GILBERT G. LUNDSTROM; JAMES A. LAPHEN; and EUGENE WITKOWICZ,** | |
| **Defendants.** | |

For his Complaint against Defendants, Rick D. Lange, the duly appointed Chapter

7 bankruptcy trustee ("the Trustee") of the bankruptcy estate of the TierOne Corporation,

alleges as follows:

LANCASTER COUNTY
2012 JUN 22 PM 2 30
CLERK OF THE
DISTRICT COURT



001159428D02

## I.   INTRODUCTION

1.     This case arises out of the preventable but disastrous demise of TierOne Corporation ("TierOne"). The named Defendants are those responsible for that financial tragedy.  Some of the Defendants are the TierOne directors and officers who, over a significant period of time, violated their fiduciary duty to TierOne and led TierOne into insolvency and bankruptcy. The remaining defendant, KPMG, upon information and belief, aided and abetted the officers and directors in violating their fiduciary duty to TierOne, primarily through the woeful audits KPMG performed, audits that masked the truth about the spiraling decline of TierOne's financial condition.  The Trustee brings these claims to hold these wrongdoers responsible for their actions.

## II.   PARTIES, JURISDICTION, VENUE

### THE TRUSTEE

2.     At all relevant times, TierOne was a publicly traded company organized under the laws of Wisconsin but with its principal place of business in Nebraska. TierOne was the sole shareholder of TierOne Bank.  At the time of the events described herein, and continuing through the filing of this action, Nebraska had a more significant relationship to TierOne than any other state.

3.     On June 24, 2010, TierOne filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Nebraska ("the Bankruptcy Court"), case number 10-bk-41974 ("the Bankruptcy Case"). Rick D. Lange was appointed Trustee of the Chapter 7 bankruptcy estate of TierOne.  Pursuant to 11 U.S.C. §108, the Trustee is

entitled to a minimum of two years from the bankruptcy Order for Relief to bring claims of TierOne existing at the time of bankruptcy, including the claims the Trustee asserts herein.  The Order for Relief was entered no earlier than June 24, 2010.

4.       On May 28, 2010,  Curtis W. Acton, a shareholder of TierOne, brought a shareholder derivative action in the United States District Court for the District of Nebraska ("the Acton case") against certain officer/director defendants, including certain of the individual  Defendants named herein.  On July 9, 2010, the Bankruptcy Court entered an order finding that the claims asserted in the Acton case were property of the TierOne bankruptcy estate and that the Trustee could assume control over the litigation of those claims. The Trustee's claims in the Acton case have been stayed in the bankruptcy court since that time.  The claims alleged herein are otherwise property of the TierOne bankruptcy estate and arise from damage to TierOne.

## KPMG, LLP

5.       KPMG, LLP ("KPMG") is a Delaware limited liability partnership transacting business in Nebraska.  From 2002 to April 23, 2010, KPMG was TierOne's outside auditor.   On information and belief, the Trustee alleges that KPMG resigned abruptly from its TierOne engagement on April 23, 2010, in an apparent effort to evade responsibility for its deficient audits in the preceding years.  KPMG is one of the largest professional services networks in the world and one of the Big Four auditors.  Its global headquarters is located in Amstelveen, Netherlands. KPMG employs 145,000 people worldwide and has three lines of services: audit, tax, and advisory. Its advisory services are further divided into three service groups - Management Consulting, Risk Consulting,

3

and Transaction & Restructuring.  KPMG had revenue of $22.7 billion in 2011.  At all material times, KPMG acted by and through its authorized agents and caused acts or events to occur in Nebraska out of which the claims against it have arisen.

## TIERONE DEFENDANTS

6.      Defendant Charles W. Hoskins ("Hoskins") is, upon information and belief, a resident of Nebraska.  From 2004 through June 25, 2010, Hoskins was a member of the TierOne board of directors and of its audit committee.  Hoskins, however, had unique experience, knowledge, and understanding that set him apart from other TierOne board members.  Hoskins was an educated, trained, and experienced CPA, having been a partner in the international accounting firm of Deloitte & Touché for many years. Hoskins had education and experience as a principal financial officer, principal accounting officer, controller, public accountant or auditor or experience in one or more positions that involve the performance of similar functions.  Hoskins had experience actively supervising a principal financial officer, principal accounting officer, controller, public accountant, auditor or person performing similar functions.

7.      Because of his education, training, and experience, Hoskins had (1) an understanding of generally accepted accounting principles and financial statements; (2) the ability to assess the general application of such principles in connection with the accounting for estimates, accruals and reserves; (3) experience preparing, auditing, analyzing or evaluating financial statements that present a breadth and level of complexity of accounting issues that are generally comparable to the breadth and complexity of issues that can reasonably be expected to be raised by a public company's

4

financial statements, and experience actively supervising one or more persons engaged in such activities; (4) an understanding of internal controls and procedures for financial reporting; and (5) an understanding of audit committee functions.

8.     As a result of Hoskins' unique and extensive education, training, and experience, beginning in 2004 and continuing through June 2010, the TierOne board of directors designated and disclosed Hoskins to the public as an "audit committee financial expert," a role that Hoskins accepted and performed on the TierOne audit committee.

9.     As alleged herein, Hoskins has caused acts or events to occur in Nebraska out of which these claims arise.

10.     Defendant Campbell R. McConnell ("McConnell") is a resident of Nebraska.  McConnell has a Ph.D. in Economics and was a professor of economics at the University of Nebraska from 1953 until approximately 1990, at which time he retired as a Professor Emeritus, a position he holds today.  McConnell is a renowned expert and author on economic theory.  From 2004 through June 25, 2010, McConnell was a member of the TierOne board of directors and of its audit committee.  In 2003, 2004, 2005, 2007, and 2008, McConnell was the chairman of the audit committee.  As alleged herein, McConnell has caused acts or events to occur in Nebraska out of which these claims arise.

11.     Hoskins and McConnell were members of the TierOne audit committee from at least 2004 through 2010, a critical time in the financial decline of TierOne.  As members of the TierOne board of directors, Hoskins and McConnell owed a fiduciary

duty directly to TierOne to act in the best interests of TierOne and to oversee and manage the assets of TierOne in a reasonable manner.

12.     As members of the special audit committee, however, Hoskins and McConnell owed additional, heightened fiduciary duties to TierOne, founded upon TierOne's Audit Committee Charter, amended as of January 26, 2006, that defined the special duties of the members of that committee.

13.     Under TierOne's Audit Committee Charter, Hoskins and McConnell were expressly charged with special duties, including but not limited to the following duties:

- "Oversee the Company's financial reporting process and systems of internal controls regarding finance, accounting, legal, and regulatory compliance";

- "Review the Company's annual audited financial statements and unaudited interim financial statements prior to filing or distribution. Review should include discussion with management and independent auditors of significant issues regarding accounting principles including critical accounting policies, practices, and judgments";

- "In consultation with the management, the independent auditors, and the internal auditors, consider the integrity of the Company's financial reporting processes and controls.  Discuss significant financial risk exposures and the steps management has taken to monitor, control, and report such exposures.  Review significant findings prepared by the

independent auditors and the internal auditing department together with management's responses";

- "Review with management and the independent auditors the Company's quarterly financial results prior to the release of earnings and/or the Company's quarterly financial statements prior to filing or distribution of the Quarterly Report on Form 10-Q or of the Annual Report Form 10-K.  Discuss any significant changes to the Company's accounting principles and any items required to be communicated by the independent auditors in accordance with AICPA SAS 61".

14.    Thus, one of the fundamental duties of the audit committee, including Hoskins and McConnell, was to oversee TierOne's financial reporting process and systems of internal controls regarding finance and accounting.   As alleged herein, Hoskins and McConnell breached the foregoing fiduciary duties owed directly to TierOne.

15.    Defendant Gilbert G. Lundstrom ("Lundstrom") is a resident of Nebraska. He was a member of the TierOne board of directors and chairman of the board from April 2002 until his resignation in January 2010, at which time he became Vice-Chairman of TierOne's board of directors, a position he resigned in March 2010.  As alleged herein, Lundstrom caused acts or events to occur in Nebraska out of which these claims arise.

16.    Defendant James A. Laphen ("Laphen") is a resident of Nebraska. He was president, chief operating officer, and member of the board of directors of TierOne from April 2002 through June 2010.   In March 2010, Laphen became the chief executive

7

officer of TierOne.  As alleged herein, Laphen has caused acts or events to occur in Nebraska out of which these claims arise.

17.    Defendant Eugene B. Witkowicz ("Witkowicz") is a resident of Nebraska. He was the executive vice-president, chief financial officer, corporate secretary and corporate treasurer of TierOne from 2003 to 2010.  As alleged herein, Witkowicz has caused acts or events to occur in Nebraska out of which these claims arise.

18.    At all relevant times, Lundstrom, Laphen and Witkowicz owed a fiduciary duty directly to TierOne to act in the best interests of TierOne.  In particular, but not by way of limitation, Lundstrom, Laphen, and Witkowicz owed a fiduciary duty directly to TierOne to oversee and manage the assets of TierOne in a reasonable manner.

19.    As the chief financial officer of TierOne, Witkowicz also owed TierOne a fiduciary duty to oversee and manage the financial affairs of TierOne in a reasonable manner.

20.    Hoskins, McConnell, Lundstrom, Laphen, and Witkowicz shall be referred to collectively as "the TierOne Defendants."

21.    As the Trustee has alleged herein, the TierOne Defendants breached the fiduciary duties they owed directly to TierOne.  However, the Trustee intends to develop through discovery that not all relevant decision makers of TierOne were involved in the breaches of fiduciary duty for which the Trustee now brings and continues this action. Upon information and belief, the Trustee alleges that , had they known the truth and existence of the breaches of duty by Defendants, relevant decision makers within TierOne could have taken meaningful action to stop the wrongful conduct.

III.   **FACTUAL BACKGROUND**

22.   TierOne was formed in 2002 and began to offer shares on the NASDAQ public stock exchange.  Thereafter, and until TierOne was delisted from the NASDAQ exchange on May 7, 2010, TierOne continued to sell stock to the public.

23.   TierOne was the parent corporation and sole shareholder of TierOne Bank, a financial institution that first opened its doors in Nebraska in 1907 as First Federal Savings and Loan Association and then, in 1995, began operating as First Lincoln Bank. As the parent corporation of TierOne Bank, TierOne had a unique and protectable interest in the value and financial well-being of TierOne Bank.  The officers and directors of TierOne, including the TierOne Defendants referred to herein, had a direct and separate obligation to TierOne to oversee and manage the assets of TierOne in a reasonable manner.  This duty imposed upon the officers and directors of TierOne Bank, including the TierOne Defendants, a specific duty to oversee and manage TierOne's primary asset - - TierOne Bank – in a reasonable manner.  It is the TierOne Directors' violation of those duties owed directly and uniquely to TierOne that the Trustee seeks in part to remedy in this case.

A.   **TierOne Defendants Employ an Expansion Strategy That Plants the Seed of TierOne's Insolvency.**

24.   Beginning in 2002, with the exception of Hoskins, who did not join the TierOne board until 2004, the TierOne Defendants oversaw, developed, and implemented an expansion strategy purportedly designed to enhance the value of TierOne's primary asset, TierOne Bank.

9

25.    In particular, beginning in 2002 and continuing through 2005, the TierOne Defendants oversaw, developed, and implemented the opening or acquisition of nine loan production offices in new geographic territories.   More critically, however, was the conscious decision on the part of the TierOne Defendants to use these new loan production offices to dramatically increase and unreasonably concentrate the number and dollar value of construction and land development loans.

26.    As part of this expansion strategy, the TierOne Defendants approved the opening and operation of a Las Vegas loan production office in December 2005.  By the end of 2006, the Las Vegas loan production office accounted for almost 30% of the nearly $3.7 billion loan portfolio of TierOne Bank.

27.    TierOne's expansion strategy was, in and of itself, an unreasonable and high risk strategy for a financial institution holding company like TierOne. The TierOne Defendants violated their fiduciary duty to TierOne by devising and implementing it. The strategy unreasonably risked and threatened the existence of the primary corporate asset of TierOne – TierOne Bank. As the Trustee will describe below, however, with the substantial assistance of TierOne's auditor, KPMG, the TierOne Defendants continued and compounded their breach of fiduciary duty by their abject failure to adequately oversee the expansion and to account for the debilitating loan losses that were the direct result of the flawed and poorly monitored loan production offices.

**B.**      **With the Substantial Assistance of TierOne's Auditor, KPMG, the TierOne Defendants Breached Their Fiduciary Duties Owed Directly to TierOne.**

28.      Despite high growth numbers in the loan production offices between 2002 and 2006, TierOne's financial condition in fact became more precarious.  As TierOne's Bank's loan portfolio grew from $1.9 billion in 2002 to its highest level of $3.7 billion in 2006, the loan portfolio became unreasonably concentrated in construction and land development loans.   This unreasonable concentration of construction and land development loans could only have occurred as a direct result of the TierOne Defendants' directives and policies as directors and officers of TierOne, the parent company of TierOne Bank.

29.      The unreasonably risky concentration of construction and land development loans was the foundation of the ultimate demise of TierOne.  In addition to devising and implementing directives and policies that created the risky concentration of construction and land development loans, with the substantial assistance of TierOne's outside auditor, KPMG, the TierOne Defendants failed to create and maintain reasonable internal controls, risk management, underwriting, and credit administration procedures and policies to identify and minimize the risk inherent in the expanded loan portfolio.  The TierOne Defendants' failure was particularly acute at the Las Vegas loan production office.

30.      As a direct result of the actions and inaction of the TierOne Defendants, TierOne began to experience significant and material loan losses resulting principally from losses of TierOne Bank in the loan portfolio.  These losses, in turn, significantly

diminished earnings and eroded capital of TierOne. These loan losses ultimately caused and increased the insolvency of TierOne.

31.    As the loan losses increased, with the substantial assistance from KPMG, the TierOne Defendants failed to adequately and properly account for the increasing loan losses under applicable accounting standards, including generally accepted accounting principles.   Consequently, with the substantial assistance of KPMG, the TierOne Defendants created and maintained materially misstated financial statements for TierOne that, in fact, masked the deepening insolvency of TierOne.

32.    As the loan losses increased, also with the substantial assistance from KPMG, the TierOne Defendants caused TierOne to file materially misstated reports and documents with the Securities and Exchange Commission.

33.    As alleged herein, the conduct of the TierOne Defendants constituted a breach of their fiduciary duty owed directly to TierOne, the parent corporation of TierOne Bank.  The TierOne Defendants' breaches of fiduciary duty owed directly to TierOne in turn caused TierOne to lose the value and control of its primary asset, TierOne Bank.  In particular, the TierOne Defendants' breach of fiduciary duty, and the substantial assistance from KPMG, directly resulted in the Office of Thrift Supervision's ("OTS") increased regulatory scrutiny of TierOne Bank, which included a January 2009 supervisory agreement.  Ultimately, OTS closed TierOne Bank and appointed the FDIC as receiver over TierOne Bank.

34.    The misconduct of the TierOne Defendants, as alleged herein, on information and belief, aided and abetted by KPMG, caused the deepening insolvency of

12

TierOne.  Had the TierOne Defendants refrained from breaching their fiduciary duties to TierOne with the substantial assistance of KPMG, TierOne could have avoided taking upon itself increasing debt and would have avoided the loss of its primary asset and bankruptcy.

35.    KPMG was TierOne's independent outside auditor continuously from 2002 through April 23, 2010.  KPMG was not a passive spectator to the breaches of fiduciary duty referred to above, nor to the demise of TierOne.  Indeed, KPMG enabled and facilitated the breach of fiduciary duty by the TierOne Defendants.

36.    In taking on the role of TierOne's auditor, KPMG made certain written promises directly and uniquely to TierOne.  KPMG promised TierOne in writing to:

- perform an audit of TierOne's consolidated financial statements and an audit of its internal control over financial reporting;

- conduct the audit of TierOne's consolidated financial statements in accordance with the standards of the Public Company Accounting Oversight Board (PCAOB) (United States), with the objective of expressing an opinion as to whether the presentation of the consolidated financial statements and schedules, taken as a whole, conforms with U.S. generally accepted accounting principles;

- conduct the audit of TierOne's internal control over financial reporting in accordance with the standards of the PCAOB (United States), with the objective of obtaining reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects;

13

- perform tests of the accounting records and such other procedures, as KPMG considered  necessary in the circumstances, to provide a reasonable basis for KPMG's opinions;

- assess the accounting principles used and significant estimates made by TierOne's management, and evaluate the overall consolidated financial statement presentation;

- obtain an understanding of internal control over financial reporting, assessing the risk that a material weakness exists, and testing and evaluating the design and operating effectiveness of internal control based on the assessed risk, and performing such other procedures as KPMG considered necessary in the circumstances;

- plan and perform the audit to obtain reasonable assurance about whether the consolidated financial statements are free of material misstatement, whether caused by error or fraud;

- plan and perform the audit with an objective to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects as of TierOne's fiscal year end and that the consolidated financial statements are free from material misstatement;

- plan and perform the audit with an objective to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects as of TierOne's fiscal year end and that the consolidated

14

financial statements are free from material misstatement. plan and perform the audit with an objective to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects as of TierOne's fiscal year end and that the consolidated financial statements are free from material misstatement;

- read information in TierOne's annual report (Form 10- K) and consider whether such information, or the manner of its presentation, is materially inconsistent with information, or the manner of its presentation, appearing in the consolidated financial statements or is inconsistent with the results of KPMG's audit of internal control over financial reporting;

- conduct its audit of TierOne to meet the reporting requirements of Section 112 of the FDIC Improvement Act of 1991 (FDICIA);

- review the consolidated statements of financial condition of TierOne, and the related consolidated statements of operations, changes in stockholders' equity and comprehensive income (loss), and cash flows for the quarterly and year-to-date periods, which are to be included in the quarterly reports (Form 10-Q) proposed to be filed by TierOne under the Securities Exchange Act of 1934;

- review the selected quarterly financial data specified by Item 302 of Regulation S-K, which is required to be included in the annual report (Form 10-K) proposed to be filed by TierOne under the Securities Exchange Act of 1934;

- conduct the foregoing reviews in accordance with the provisions of the standards of the PCAOB (United States) communicate whether KPMG is aware of any

material modifications that should be made to such interim financial information for it to conform to U.S. generally accepted accounting principles;

- discuss KPMG's judgments of the quality and understandability, not just the acceptability, of TierOne's accounting policies and disclosures, prior to the filing of KPMG's audit reports with the SEC;

- report to the Audit Committee, in writing, all significant deficiencies and material weaknesses identified during the Integrated Audit;

- if a significant deficiency or material weakness existed because of the oversight of the company's external financial reporting and internal control over financial reporting by the Audit Committee, KPMG would report such deficiency in writing to the board of directors;

- if during performance of KPMG's quarterly review services KPMG became aware of matters that caused them to believe the interim information filed, or to be filed, with the SEC or Office of Thrift Supervision, was probably materially misstated as a result of a departure from U.S. generally accepted accounting principles, KPMG would discuss such matters with management and, if appropriate, communicate such matters to the Audit Committee;

- if KPMG became aware of information that related to the consolidated financial statements and/or management's assessment regarding the effectiveness of internal control over financial reporting after KPMG had issued its reports or completed its interim review procedures, but which was not known to KPMG at the date of its reports or completion of its interim review procedures, and which was of such a

16

nature and from such a source that KPMG would have investigated that information had it come to its attention during the course of its Integrated Audit and/or interim review procedures, KPMG would, as soon as practicable; (1) communicate such an occurrence to the Audit Committee; and (2) undertake an investigation to determine whether the information is reliable and whether the facts existed at the date of KPMG's reports or completion of its interim review procedures;

37.     KPMG took upon itself the foregoing written contractual promises in the audit engagement for TierOne for the years 2002, 2003, 2004, 2005, 2006, 2007, and 2008.

38.     KPMG breached these contractual duties.

39.     In conducting each of its audits for TierOne, KPMG also took upon itself the obligation and duty to perform those audits competently, without negligence, in good faith, and with sufficient skill and ability to comply with the applicable standard of care for an auditor under the same or similar circumstances.

40.     With the opening of the TierOne Bank loan production office in Las Vegas, Nevada in 2005 and continuing through at least year end 2008, TierOne Bank began to experience increasing and unacceptably high loan losses from its concentration of construction and land development loans.  In violation of its contractual obligations and professional duty of care, KPMG failed to detect, report, and account for those increasing loan losses in its audits of TierOne.  In particular, but not by way of limitation, KPMG failed to ensure that TierOne's financial statements fairly presented the appropriate

17

treatment of loan losses and loan loss reserves directly affecting TierOne under generally accepted accounting standards. Had KPMG complied with its duties and obligations to TierOne, TierOne could have taken appropriate action to reduce and avoid escalating loan losses and to present to the public financial statements that were free of materially misstated facts.

41.     Moreover, during this same time, in further violation of its contractual obligations and professional duty of care, KPMG failed to detect, report, and account for the deteriorating and dysfunctional internal controls at TierOne that were allowing and enabling the loan losses to arise and continue. Had KPMG complied with its duties and obligations to TierOne, TierOne could have taken appropriate action to address the deficient internal controls and put in place a system of internal controls that could have reduced and avoided escalating loan losses and ensured that TierOne could present financial statements to the public that were free of materially misstated facts.

42.     Rather than comply with its duty and reveal the deficiencies in TierOne's financial statements in (at a minimum) 2006, 2007, and 2008, KPMG chose instead to give clean audit opinions for each of those years, certifying that TierOne's financial statements "fairly presented" the financial condition of TierOne. In fact, those financial statements were materially misstated. In particular, but not by way of limitation, the TierOne financial statements materially misstated the appropriate level of loan loss reserves attributable to the loan portfolio of TierOne's principal asset, TierOne Bank.

43.     KPMG's breaches of duty directly caused TierOne's financial condition to decline from 2005 through 2008. TierOne Bank's earnings dropped and its capital began

to evaporate.  Consequently, because of KPMG's continuing breach of duty, the Office of Thrift Supervision ("OTS") required TierOne Bank to enter into a Supervisory Agreement in early 2009.   Ultimately, as a proximate result of KPMG's improper conduct,  TierOne lost its primary asset, TierOne Bank.

44.     Had the TierOne Defendants and KPMG complied with their respective duties, TierOne could have taken appropriate action to address and remedy the escalating loan losses and could have saved TierOne's asset.

45.      The last audit KPMG performed for TierOne was its audit for the year 2008.  KPMG completed that audit and issued its clean audit opinion for that year in March of 2009, at a time when KPMG knew or should have known that the financial statements of TierOne were materially misstated.

46.     From that point forward, TierOne's financial condition deteriorated rapidly, primarily due to the financial free fall of TierOne Bank.  The impending failure of TierOne Bank loomed ever more a reality.  Upon information and belief, the Trustee alleges that KPMG then took action to deflect responsibility for that failure. On April 23, 2010, KPMG informed TierOne orally and in writing that the "auditor-client relationship between TierOne Corporation...and KPMG, LLP has ceased."   On information and belief, and based on the circumstances of that resignation, it appears that KPMG gave the reasons for that resignation and in a way to deflect  its own liability.

47.     Specifically, on April 29, 2010, TierOne filed a form 8-k with the Securities and Exchange Commission to disclose and explain the circumstances of KPMG's departure.  In that filing, TierOne stated as follows:

On April 23, 2010, TierOne Corporation (the "Company") was advised orally by KPMG LLP ("KPMG"), the Company's independent registered public accounting firm, that KPMG was resigning from its position as the independent auditors of the Company and of the TierOne Bank Savings Plan, effective immediately. The oral resignation was subsequently confirmed in writing. A copy of the letters of resignation are attached to this Current Report on Form 8-K as Exhibit 99.1 and Exhibit 99.2.

Prior to April 23, 2010, KPMG had not previously advised management or the Company's Audit Committee of its intention to resign its engagement as the Company's independent registered public accounting firm. The resignation was not sought or recommended by the Company's Audit Committee. The Audit Committee is in the process of commencing an immediate search for a new independent accountant.

It is the Company's understanding that KPMG has resigned as a culmination of factors related to an examination by the Office of Thrift Supervision (OTS), TierOne Bank's primary regulator, which required the Company to reevaluate its loan loss provisions for the quarter ended June 30, 2009. Specifically, on April 25, 2010, KPMG orally advised the Company (through the Company's Audit Committee) that KPMG requested on multiple occasions, and did not timely receive, a document estimating potential additional needs for specific reserves (the "document"), which was provided to the OTS and referenced in an OTS examination report, and that the Company allegedly asserted to the OTS, after the OTS had requested an additional copy of it, that the document had been destroyed. KPMG further indicated that the document, and management's alleged actions related to it, lead KPMG to conclude that it is no longer able to rely on management's representations.

Contrary to KPMG's position, the Company had previously provided the document to KPMG. Moreover, the document was provided electronically to the OTS and was not destroyed by the Company. The Company also notes that at no point did KPMG inform the Company's Audit Committee of the failure to receive the document, and that as recently as April 19, 2010, KPMG had affirmed (without absolute assurance ) that it believed it could be in a position to issue its audit opinion in time for the Company to file its Annual Report on Form 10-K for the year ended December 31, 2009, amended Form 10-Q for the quarter ended June 30, 2009 and Form 10-Q for the quarter ended September 30, 2009 by April 30, 2010.

. . .

20

The report of KPMG on the financial statements of the Company for the fiscal year ended December 31, 2008 contained no adverse opinions or disclaimer of opinion and was not qualified or modified as to uncertainty, audit scope or accounting principles (KPMG did not issue a report for the fiscal year ended December 31, 2009). For the fiscal years ended December 31, 2008 and December 31, 2009 and through the date of this report, there were no disagreements with KPMG on any matter of accounting principles or practices, financial statement disclosure or audit scope or procedure which, if not resolved to the satisfaction of KPMG, would have caused it to make reference to the subject matter of such disagreement in its reports on the financial statements for such fiscal years. Nor, except to the extent described below in this Form 8-K, were there any reportable events within the meaning of Item 304(a)(1)(v) of Regulation S-K for the fiscal years ended December 31, 2008 and December 31, 2009 and through the date of this report.   In connection with KPMG's resignation, KPMG advised the Company orally that it had concluded that it is no longer able to rely on management's representations and that it was withdrawing its audit opinion relating to the Company's financial statements at and for the year ended December 31, 2008 contained in the Annual Report on Form 10-K filed by the Company on March 13, 2009 (the "2008 Form 10-K") because such financial statements contain material misstatements related to certain out of period adjustments for loan loss reserves; and that it was withdrawing its internal control assessment relating to the Company's financial statements at and for the year ended December 31, 2008 contained in the 2008 Form 10-K due to a material weakness in internal control over financial reporting related to the material misstatements.

48.    Based upon the foregoing and subject to further discovery, the Trustee alleges that KPMG's resignation was improper and resulted in KPMG evading responsibility for its own misconduct in causing the demise of TierOne and the loss of its primary asset, TierOne Bank.

49.    In resigning as it did from its long professional relationship with TierOne, and in withdrawing its previous clean audit opinion on TierOne's financial statements for

2008, KPMG breached its contractual agreement with TierOne and also the implied obligation of good faith and fair dealing. In doing so, KPMG sought to disavow its contractual obligations to TierOne. Consequently, KPMG should not now be entitled to invoke any provision of any contractual agreement with TierOne, including but not limited to, any dispute resolution provision of any agreement.

### III.   CLAIMS FOR RELIEF

### CLAIMS AGAINST TIERONE DEFENDANTS

### COUNT ONE

### (Breach of Fiduciary Duty: Hoskins and McConnell)

50.   The Trustee incorporates herein all foregoing paragraphs of this Complaint.

51.   As alleged herein, by virtue of their position as directors of TierOne, Hoskins and McConnell directly owed TierOne a fiduciary duty directly to TierOne to act in the best interests of TierOne and to oversee and manage TierOne's assets, including TierOne Bank, in a reasonable manner. Moreover, Hoskins and McConnell directly owed TierOne additional, special fiduciary duties as set forth in TierOne's Audit Committee Charter.

52.   As alleged herein, Hoskins and McConnell breached their fiduciary duties owed directly to TierOne.

53.   As a direct and proximate result of Hoskins' and McConnell's breaches of fiduciary duty, TierOne has been damaged.

54.   Hoskins' and McConnell's breaches of fiduciary duty exhibited a continuing, cumulative pattern of tortious conduct from 2002 to the time of the

resignation of Hoskins and McConnell. That pattern of tortious conduct was capable of being terminated from 2002 to the time of the resignation of Hoskins and McConnell and directly and foreseeably caused continuing and repeated injury to TierOne.

55.     Wherefore, the Trustee prays for judgment against Hoskins and McConnell as follows:

A.     Direct and consequential damages in an amount to be established at trial;

B.     Costs of this action and prejudgment and post judgment interest; and

C.     All other relief justified under the circumstances of this case.

## COUNT TWO

### (Breach of Fiduciary Duty: Lundstrom, Laphen, and Witkowicz)

56.     The Trustee incorporates herein all foregoing paragraphs of this Complaint.

57.     As alleged herein, by virtue of their position as directors and officers of TierOne, Lundstrom, Laphen, and Witkowicz directly owed a fiduciary duty directly to TierOne to act in the best interests of TierOne and to manage and oversee the assets of TierOne in a reasonable manner. Likewise, by virtue of his position as chief financial officer of TierOne, Witkowicz directly owed TierOne a fiduciary duty act in the best interests of TierOne and to oversee the financial affairs of TierOne in a reasonable and prudent manner.

58.     As alleged herein, Lundstrom, Laphen, and Witkowicz breached their fiduciary duties owed directly to TierOne.

23

59.     As a direct and proximate result of the breaches of fiduciary duty of Lundstrom, Laphen, and Witkowicz , TierOne has been damaged.

60.     The breaches of fiduciary duty of Lundstrom, Laphen, and Witkowicz exhibited a continuing, cumulative pattern of tortious conduct from 2002 to the time of the resignation of Lundstrom, Laphen, and Witkowicz .  That pattern of tortious conduct was capable of being terminated from 2002 to the time of the resignation of each of Lundstrom, Laphen, and Witkowicz  and directly and foreseeably caused continuing and repeated injury to TierOne.

Wherefore, the Trustee prays for judgment against Lundstrom, Laphen, and Witkowicz  as follows:

> A.     Direct and consequential damages in an amount to be established at trial;
>
> B.     Costs of this action and prejudgment and post judgment interest; and
>
> C.     All other relief justified under the circumstances of this case.

### (COUNT THREE)

### (Corporate Waste)

61.     The Trustee incorporates herein all foregoing paragraphs of this Complaint.

62.     As alleged herein, through their wrongful conduct as officers and directors of TierOne, the TierOne Defendants directly and proximately caused TierOne to waste valuable corporate assets in implementing, managing, and attempting to recover from the effects of the expansion strategy described above.  That corporate waste culminated in TierOne's bankruptcy petition.

24

63.    In addition to the foregoing acts of corporate waste, as alleged herein, the TierOne Defendants directly and proximately caused the devaluation and ultimate loss of TierOne's primary corporate asset – TierOne Bank.

Wherefore, the Trustee prays for judgment against the TierOne Defendants as follows:

    A.  Direct and consequential damages to be established at trial;

    B.  Costs of this action and prejudgment and post judgment interest; and

    C.  All other relief justified under the circumstances of this case.

## CLAIMS AGAINST KPMG

## (COUNT FOUR)

### (Professional Negligence: Malpractice)

64.    The Trustee incorporates herein all foregoing paragraphs of this Complaint.

65.    As alleged herein, KPMG owed TierOne a duty of due professional care in performing the audits of TierOne's financial statements.

66.    KPMG and TierOne had a continuous professional relationship from at least 2002 to at least April 23, 2010.

67.    As alleged herein, KPMG breached its duty of due professional care in performing the audits of TierOne's financial statements for, at a minimum, 2007 and 2008.

68.    As a direct and proximate and foreseeable result of KPMG's breach of its duty of due professional care, TierOne has been damaged.

Wherefore, the Trustee prays for judgment against KPMG as follows:

A. Direct and consequential damages to be established at trial;

B. Costs of this action and prejudgment and post judgment interest; and

C. All other relief justified under the circumstances of this case.

### COUNT FIVE

### (Breach of Contract)

69.     The Trustee incorporates herein all foregoing paragraphs of this Complaint.

70.     As alleged herein, KPMG owed TierOne express contractual duties.

71.     As alleged herein, KPMG breached those express contractual duties.

72.     As alleged herein, KPMG breached the implied obligation of good faith and fair dealing in its contract with TierOne.

73.     As a direct and proximate result of KPMG's breach of contract, TierOne has been damaged.

Wherefore, the Trustee prays for judgment against KPMG as follows:

A. Direct and consequential damages to be established at trial;

B. Costs of this action and prejudgment and post judgment interest;

C. An order of this Court enjoining and otherwise prohibiting KPMG from invoking any contractual dispute resolution provision; and

D. Any and all other relief justified under the circumstances of this case.

## COUNT SIX

### (Aiding and Abetting Breach of Fiduciary Duty)

74.     The Trustee incorporates herein all foregoing paragraphs of this Complaint.

75.     As alleged herein, the TierOne Defendants owed TierOne fiduciary duties.

76.     As alleged herein, the TierOne Defendants breached their fiduciary duty owed to TierOne.

77.     On information and belief and subject to further discovery, the Trustee alleges that, at all material times, KPMG knew that the TierOne Defendants owed TierOne fiduciary duties.

78.     On information and belief and subject to further discovery, the Trustee alleges that, at all material times, KPMG knew that the TierOne Defendants were violating their fiduciary duties owed to TierOne.

79.     On information and belief and subject to further discovery, in ways alleged herein, KPMG  gave substantial assistance to the TierOne Defendants in the violation of their fiduciary duties owed to TierOne.

Wherefore, the Trustee prays for judgment against KPMG as follows:

A. Direct and consequential damages to be established at trial;

B. Costs of this action and prejudgment and post judgment interest; and

C. All other relief justified under the circumstances of this case.

DATED this 22nd day of June, 2012..

27

RICK D. LANGE, as Chapter 7 Trustee of the
Bankruptcy Estate of TierOne Corporation,
Plaintiff

By:_____
JOEL BACON, #22388
KEATING, O'GARA, NEDVED,
& PETER, P.C.
A Limited Liability Organization
530 South 13th Street, Suite 100
Lincoln, NE 68508
P:  (402) 475-8230
F:  (402) 475-8328
Jbacon@keatinglaw.com

# PRAECIPE

TO THE CLERK OF SAID COURT:

Please issue summons, endorsed according to law, for service upon the

Defendants and return according to law.

The Defendants will be served by certified mail, return receipt requested to:

Charles W. Hoskins
9000 Whispering Wind Road
Lincoln, NE 68512-9279

Campbell R. McConnell   X
7240 Lincolnshire Road
Lincoln, NE 68506

Gilbert G. Lundstrom
9519 Firethorn Lane
Lincoln, NE 68520-1459

James A. Laphen
1302 S. 181st Plaza
Omaha, NE 68130

Eugene B. Witkowicz
6631 Park Crest Ct.
Lincoln, NE 68506

C T Corporation System
Registered Agent for KPMG, LLP
1024 K Street
Lincoln, NE  68508



Please return the summons to the attention of Joel Bacon, KEATING, O'GARA, NEDVED & PETER, P.C., L.L.O., 530 South 13th Street, Suite 100, Lincoln, Nebraska 68508, for appropriate service.

By: _____

Joel Bacon, #22388

**Exhibit B**

**Justice:** **Subscription Service**
Nebraska Trial Courts Case Search System

NEBRASKA JUDICIAL BRANCH

Courts Homepage      Case Search      Name Search      Have Questions?

## Case Summary

In the District Court of LANCASTER County
The Case ID is  CI 12 0002486
             Rick D Lange v. KPMG LLP
The Honorable Andrew Jacobsen, presiding.
Classification: Contract Disputes
Filed on 06/22/2012
This case is Open as of 06/22/2012


## Parties/Attorneys to the Case

          Party                          Attorney
Plaintiff ACTIVE
    Rick D Lange                     Joel A Bacon
    c/o Joel Bacon                   530 S. 13th St, Ste 100
    530 S 13th St, Ste 100
    Lincoln          NE 68508        Lincoln          NE 68508
                                     402-475-8230

Plaintiff ACTIVE
    Estate of TierOne Corporation    Joel A Bacon
                                     530 S. 13th St, Ste 100
                                     Lincoln          NE 68508
                                     402-475-8230

Defendant ACTIVE
    KPMG LLP
    C/O CT Corporation System,Reg.Agnt
    1024 K Street
    Lincoln          NE 68508
Defendant ACTIVE
    Charles W Hoskins
    9000 Whispering Wind Road
    Lincoln          NE 68512
Defendant ACTIVE
    Gilbert G Lundstrom
    9519 Firethorn Land
    Lincoln          NE 68520
Defendant ACTIVE
    James A Laphen
    1302 S. 181st Plaza
    Omaha            NE 68130
Defendant ACTIVE
    Eugene Witkowicz
    6631 Park Crest Ct.
    Lincoln          NE 68506
Defendant ACTIVE
    Campbell R McConnell
    7240 Lincolnshire Rd
    Lincoln          NE 68506


## Court Costs Information

| Incurred By | Account | Date | Amount |
|---|---|---|---|
| Plaintiff | Petition | 06/22/2012 | $35.00 |
| Plaintiff | Filing Fee - State | 06/22/2012 | $5.00 |
| Plaintiff | Automation Fee | 06/22/2012 | $8.00 |
|  |  |  |  |

| Plaintiff | NSC Education Fee | 06/22/2012 | $1.00 |
|-----------|-------------------|------------|-------|
| Plaintiff | Dispute Resolution Fee | 06/22/2012 | $0.75 |
| Plaintiff | Indigent Defense Fee | 06/22/2012 | $3.00 |
| Plaintiff | Uniform Data Analysis Fee | 06/22/2012 | $1.00 |
| Plaintiff | J.R.F. | 06/22/2012 | $6.00 |
| Plaintiff | Filing Fee-JRF | 06/22/2012 | $2.00 |
| Plaintiff | Legal Aid/Services Fund | 06/22/2012 | $5.25 |
| Plaintiff | Complete Record | 06/22/2012 | $15.00 |
| Plaintiff | Service Fees | 06/28/2012 | $7.20 |
| Plaintiff | Service Fees | 06/28/2012 | $7.20 |
| Plaintiff | Service Fees | 06/28/2012 | $7.20 |
| Plaintiff | Service Fees | 06/28/2012 | $7.20 |
| Plaintiff | Service Fees | 06/28/2012 | $7.20 |
| Plaintiff | Service Fees | 06/28/2012 | $7.20 |
| Plaintiff | Counsel-Discipline Cash Fun | 06/25/2012 | $250.00 |
| Plaintiff | Counsel-Discipline Cash Fun | 07/13/2012 | $250.00 |
| Plaintiff | Counsel-Discipline Cash Fun | 07/13/2012 | $250.00 |

## Financial Activity

No trust money is held by the court
Fee/Fine held by the court is          $500.00

## Payments Made to the Court

| Receipt | Type | Date | For | Amount |
|---------|------|------|-----|--------|
| 585088 | Check | 07/19/2012 | Lange,Rick,D, | $250.00 |
|  |  |  | Counsel-Discipline Cas | $250.00 |
| 584926 | Check | 07/13/2012 | Lange,Rick,D, | $250.00 |
|  |  |  | Counsel-Discipline Cas | $250.00 |
| 584034 | Check | 06/25/2012 | Lange,Rick,D, | $250.00 |
|  |  |  | Counsel-Discipline Cas | $250.00 |
| 583969 | Check | 06/22/2012 | Lange,Rick,D, | $82.00 |
|  |  |  | Petition | $35.00 |
|  |  |  | Filing Fee - State | $5.00 |
|  |  |  | Automation Fee | $8.00 |
|  |  |  | NSC Education Fee | $1.00 |
|  |  |  | Dispute Resolution Fee | $.75 |
|  |  |  | Indigent Defense Fee | $3.00 |
|  |  |  | Uniform Data Analysis | $1.00 |
|  |  |  | J.R.F. | $6.00 |
|  |  |  | Filing Fee-JRF | $2.00 |
|  |  |  | Legal Aid/Services Fun | $5.25 |
|  |  |  | Complete Record | $15.00 |

## Register of Actions

07/13/2012 Motion-Pro Hac Vice Admission
          This action initiated by party Rick D Lange

added to generate fee.


07/13/2012 Order
            This action initiated by Judge Andrew Jacobsen
       granting admittance Pro Hace Vice - Steven C Smith & Stephen C Biggs
            Image ID  001165418D02


07/13/2012 Motion-Pro Hac Vice Admission
            This action initiated by party Rick D Lange
       002-of Steven C Smith & Stephen C Biggs
            Image ID  001164512D02


07/03/2012 Order


            This action initiated by Judge Andrew Jacobsen
       Granting admittance Pro Hac Vice. Richard R. Thomas.
            Image ID  001160491D02


06/28/2012 Return Summons/Alias Summons
            The document number is 00375585
            Served 06/26/2012, Certified Mail on Campbell R McConnell
Served by CM on Campbell R McConnel & signed for on 6-26-12
            Image ID  001155334D02


06/28/2012 Return Summons/Alias Summons
            The document number is 00375577
            Served 06/26/2012, Certified Mail on Eugene Witkowicz
Served by CM on Eugene B Witkowicz & signed for on 6-26-12
            Image ID  001155339D02


06/28/2012 Return Summons/Alias Summons
            The document number is 00375576
            Served 06/26/2012, Certified Mail on James A Laphen
Served by CM on James Laphen & signed for by Christine Laphen
            Image ID  001155337D02


06/28/2012 Return Summons/Alias Summons
            The document number is 00375575
            Served 06/27/2012, Certified Mail on Gilbert G Lundstrom
Served by CM on Gilbert G Lundstrom & signed for on 6-27-12
            Image ID  001155338D02


06/28/2012 Return Summons/Alias Summons
            The document number is 00375574
            Served 06/26/2012, Certified Mail on Charles W Hoskins
Served by CM on Charles W Hoskins & signed for on 6-26-12


            Image ID  001155335D02


06/28/2012 Return Summons/Alias Summons
            The document number is 00375573
            Served 06/26/2012, Certified Mail on KPMG LLP
Served by CM on CT Corporation System & signed for by Cada Law office
            Image ID  001155336D02

06/25/2012 Motion-Pro Hac Vice Admission
          This action initiated by party Rick D Lange
     001-for Richard R Thomas
          Image ID  001159544D02


06/25/2012 Summons Issued on Campbell R McConnell
          The document number is 00375585
      E-MAILED: jbacon@keatinglaw.com


          Image ID  D00375585D02


06/25/2012 Summons Issued on Eugene Witkowicz
          The document number is 00375577
      E-MAILED: jbacon@keatinglaw.com
          Image ID  D00375577D02


06/25/2012 Summons Issued on James A Laphen
          The document number is 00375576
      E-MAILED: jbacon@keatinglaw.com
          Image ID  D00375576D02


06/25/2012 Summons Issued on Gilbert G Lundstrom
          The document number is 00375575
      E-MAILED: jbacon@keatinglaw.com
          Image ID  D00375575D02



06/25/2012 Summons Issued on Charles W Hoskins
          The document number is 00375574
      E-MAILED: jbacon@keatinglaw.com
          Image ID  D00375574D02


06/25/2012 Summons Issued on KPMG LLP
          The document number is 00375573
      E-MAILED: jbacon@keatinglaw.com
          Image ID  D00375573D02


06/22/2012 Complaint-Praecipe
          This action initiated by party Rick D Lange
      Breach of Fiduciary Duty
          Image ID  001159428D02



## Judges Notes

07/02/2012
07-02-2012 Stacy                              Reporter
Judge Stacy recuses herself from this case. Clerk to randomly reassign
case.
07/03/2012
07-03-2012 Jacobsen                           Reporter
For order granting pro hac vice see file.
07/13/2012

```
07-13-2012 Jacobsen                        Reporter
For order granting admittance for Steven Smith and Stephen Biggs pro
hac vice, see file.
```

**<u>Exhibit C</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE: | Case No. BK10-41974-TLS |
| TIERONE CORPORATION, | |
| Debtor. | Chapter 7 |
| CURTIS W. ACTON, derivatively on behalf of nominal defendant TierOne Corporation, | A10-4065-TLS |
| Plaintiff, | |
| vs. | |
| JAMES A. LAPHEN, *et al*, | |
| Defendants. | |

## STATUS REPORT

Rick D. Lange, Chapter 7 Trustee of TierOne Corporation (the "Trustee"), by and though his attorneys, Rembolt Ludtke LLP, in response to the Court's Order at Filings No. 7 and 24, provides the following Status Report regarding the above captioned adversary proceeding (the "Adversary Proceeding").

1.      The Adversary Proceeding was filed on May 20, 2010.  Thereafter, on June 24, 2010, Plaintiff / Debtor TierOne Corporation filed for Chapter 7 Bankruptcy protection and Rick D. Lange was appointed Chapter 7 Trustee.

2.      As ordered by the Court per its Order dated August 11, 2010 (Filing No. 7), the Debtor (and therefore the Trustee) is the real party in interest in Adversary Proceeding and the claims asserted herein are property of Debtor's bankruptcy estate.

3.      On April 20, 2012, per an Application (Filings No. 390 and 403) and Order (Filings No. 391 and 404), the Trustee employed Richard R. Thomas and the attorneys of Smith Campbell Clifford Kearney Gore as special counsel to evaluate and prosecute certain claims, rights, and causes of action, including without limitation the some or all of the claims asserted in the Adversary Proceeding.

L:\wdox\clients\27777\491\00495166.DOC

4.     The Trustee has decided to pursue and is pursuing certain claims against certain former officers and directors of Debtor, specifically, Charles W. Hoskins, Campbell R. McConnell, Gilbert G. Lundstrom, James Laphen and Eugene Witkowicz. To that end, on June 22, 2012, the Trustee filed a lawsuit in the District Court of Lancaster County, Nebraska, at Case No. CI12-2486 (the "District Court Action"), a copy of which is attached. The Trustee is not pursuing all defendants named in the Adversary Proceeding, but the Trustee views the District Court Action as involving similar theories of recovery to those alleged in the Adversary Proceeding such that the Adversary Proceeding should remain stayed.

5.     As a result of the filing of the District Court Action, the Trustee requests that the Adversary Proceeding remain stayed pending resolution of the District Court Action or pending further status reports to be filed by the Trustee as ordered by the Court.

WHEREFORE, the Trustee prays the Court for an Order accepting this Status Report, ordering that the Adversary Proceeding remain stayed and granting such other and further relief as the Court finds in the premises.

## CERTIFICATE OF SERVICE

The undersigned hereby relies on the ECF system to provide notice of filing of the above to the U.S. Trustee, and all other CM/ECF participants in this case.

DATED: June 28, 2012

RICK D. LANGE, Chapter 7, Trustee

By:     REMBOLT LUDTKE LLP
        1201 Lincoln Mall, Suite 102
        Lincoln, NE 68508
        Telephone:  (402) 475-5100

By:     /s/ Brian S. Kruse
        Brian S. Kruse (#21963)

L:\wdox\clients\27777\491\00495166.DOC