IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RICK D. LANGE, as Chapter 7 Trustee of the Bankruptcy Estate of TierOne Corporation;<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES W. HOSKINS, CAMPBELL R. MCCONNELL, GILBERT G. LUNDSTROM, EUGENE B. WITKOWICZ, JAMES A. LAPHEN, KPMG LLP,<br><br>Defendants. | 4:12CV3148<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on The Federal Deposit Insurance Corporation's ("FDIC") Motion to Intervene. (Filing No. 39). For the reasons set forth below, the motion is granted.

BACKGROUND

This case involves the bankruptcies of TierOne Bank (the "TierOne Bank") and its holding company TierOne Corporation (the "TierOne Holding Company")(collectively TierOne Bank and TierOne Holding Company are referred to as "TierOne" throughout this opinion). During the times applicable to this action TierOne Bank was a wholly owned subsidiary of TierOne Holding Company. The parties allege that sometime in 2004, TierOne began implementing aggressive growth strategies focused on high-risk commercial real estate ("CRE") loans, including acquisition, development and construction ("ADC") loans. In addition, TierOne expanded its operations and opened or acquired nine loan production offices including an operation in Las Vegas which accounted for almost 30% of TierOne Bank's loan portfolio by 2006.

1

TierOne Bank subsequently experienced "significant and material loan losses" primarily in its loan portfolio. Plaintiff alleges the losses "significantly diminished earnings and eroded capital" of TierOne. TierOne Bank subsequently became insolvent and filed for bankruptcy. Likewise, because the only asset held by the TierOne Holding Company was TierOne Bank stock, the Holding Company became insolvent and declared bankruptcy. Rick Lange was appointed as Trustee of the Holding Company. The FDIC was appointed as Receiver of TierOne Bank.

Lange, acting as trustee (the "Trustee") for the TierOne Holding Company, filed this action against defendants Charles W. Hoskins, Campbell R. McConnell, Gilbert G. Lundstrom, Eugene B. Witkowicz, James A. Laphen, (collectively "the TierOne Defendants") and KPMG LLP. Lange alleges each of the TierOne Defendants served as directors and/or officers of TierOne Holding Company and committed various acts of mismanagement which led to the failure of TierOne Bank and TierOne Holding Company. Although the Amended Complaint does not specifically address the defendants' respective roles with TierOne Bank, each of the named defendants also served as an officer and/or director of TierOne Bank during the relevant time period. Compare Filing No. 63-1 with Filing No. 64-1.

Specifically, the First Amended Complaint alleges the following acts of malfeasance against the TierOne Defendants:

- TierOne Defendants violated their fiduciary duty by devising and implementing an unreasonable and high risk expansion strategy. (Filing No. 23, ¶ 27 at CM/ECF p. 10).

- TierOne Defendants "continued and compounded their breach of fiduciary duty by their . . . failure to adequately oversee the expansion and to account for the debilitating loan losses that were the direct result of the flawed and poorly monitored loan production offices." Id.

- TierOne Defendants caused the "unreasonable concentration of construction and land development loans." (Filing No. 23, ¶28 at CM/ECF pp. 10-11).

- As a direct result of the actions and inaction of the TierOne Defendants, TierOne experienced "significant and material loan losses resulting principally from losses of TierOne Bank in the loan portfolio" (Filing No. 23, ¶30 at CM/ECF p. 11).

- TierOne Defendants "failed to create and maintain reasonable internal controls, risk management, underwriting, and credit administration procedures . . . ." (Filing No. 23, ¶29 at CM/ECF p. 11).

- TierOne Defendants "caused TierOne to file materially misstated reports and documents with the Securities and Exchange Commission." (Filing No. 23, ¶32 at CM/ECF p. 12).

Based on these allegations Plaintiff is suing the TierOne Defendants for breaching their fiduciary duty to the TierOne Holding Company and for wasting its corporate assets. (Filing No. 23, ¶¶52-65 at CM/ECF pp. 22-5).

LEGAL ANALYSIS

A.  **Intervention as a Matter of Right**

The FDIC has filed a motion to intervene as a matter of right or, in the alternative, at the court's discretion. The FDIC asserts the plaintiff's claims against the TierOne Defendants are, in substance, claims against the individual defendants for their actions and inactions while operating TierOne Bank. And, because TierOne Holding Company is the sole shareholder of TierOne Bank, the plaintiff's claims are derivative in nature and belong solely to the FDIC as the receiver of TierOne Bank.

Pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, upon the filing of a timely motion, the court must permit anyone to intervene who:

> (1)  is given an unconditional right to intervene by a federal statute; or
>
> (2)  claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Thus, Rule 24 provides that the proposed intervenor must establish that the motion is timely, that it has a recognized interest in the litigation, that the interest may be impaired by the resolution of the case, and that no other party can adequately protect its interest. South Dakota ex rel Barnett v. U.S. Dept. of Interior, 317 F.3d 992, 785 (8th Cir. 2003). "Rule 24 should be liberally construed with all doubts resolved in favor of the proposed intervenor." Id. (citing Turn Key Gaming, Inc. v. Oglala Sioux Tribe, 164 F.3d 1080, 1081 (8th Cir. 1999)).

### 1.  **Timeliness**

First, the court must decide whether the proposed intervenor's motion is timely. When making this determination the court should consider:

> (1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties.

American Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Academy, 643 F.3d 1088, 1093 (8th Cir. 2011).

The plaintiff's initial complaint was filed on June 22, 2012 and was removed to this court on July 23, 2012. (Filing No. 1). Just over a month later, the FDIC filed its motion to intervene. (Filing No. 31). This one-month delay is insubstantial, particularly since the parties had not commenced discovery at the time the FDIC filed its motion. The court finds the current parties were not prejudiced by the timing of the FDIC's motion to intervene, and neither party has argued to the contrary. The FDIC's motion is timely.

2. **FDIC's Interest in the Litigation**

Second, the court must determine whether the FDIC has "a recognized interest in the subject matter of the litigation." United States v. Union Elec. Co., 64 F.3d 1152, 1160 (8th Cir. 1995).

> An interest is cognizable under Rule 24(a)(2) only where it is "direct, substantial, and legally protectable." United States v. Union Elec. Co., 64 F.3d 1152, 1161 (8th Cir.1995). An economic interest in the outcome of the litigation is not itself sufficient to warrant mandatory intervention. Curry v. Regents of the Univ., 167 F.3d 420, 422-23 (8th Cir. 1999). An interest that is "contingent upon the occurrence of a sequence of events before it becomes colorable" is also not sufficient to satisfy Rule 24(a)(2). Standard Heating & Air Conditioning Co. v. City of Minneapolis, 137 F.3d 567, 571 (8th Cir.1998), quoting Washington Elec. v. Mass. Mun. Wholesale Elec., 922 F.2d 92, 97 (2d Cir.1990).

Medical Liability Mut. Ins. Co. v. Alan Curtis LLC, 485 F.3d 1006, 1008 (8th Cir. 2007).

Pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), the FDIC succeeds to "all rights, titles, powers and privileges of the insured depository institution and of any stockholder . . . of such institution with respect to the institution and the assets of the institution." 12 U.S.C.§ 1821(d)(2)(A)(i). Thus, as receiver for the TierOne Bank, the FDIC unquestionably has a right to intervene in actions where a bank or other depository institution files for bankruptcy and shareholders attempt to bring an action

5

against the bank's officers and directors. However, the question presented in this case is more complicated. That is – what are the FDIC's rights, if any, when a bank's holding company is involved in litigation asserting claims directly related to the management of the bank and the diminution of the bank's assets against individuals serving as officers and directors of both the holding company and the wholly owned bank?

In arguing it has an interest in this litigation, the FDIC alleges that the claims presented by the Trustee are best characterized as claims brought by the TierOne Holding Company in its capacity as the sole shareholder of the TierOne Bank because the claims relate directly to the management and failure of the TierOne Bank. Therefore, its claims are really derivative claims against the management of the TierOne Bank and may only be brought by the FDIC. For its part, the Trustee argues the claims on the face of the amended complaint are only made against the TierOne Defendants in their capacities as officers and/or directors of the TierOne Holding Company and are independent of any claims that may be brought against the defendants in their capacities as officers and/or directors of the TierOne Bank. Further, the Trustee argues that even if the claims could somehow be characterized as shareholder claims, they are not derivative under Nebraska law. Therefore, the Trustee argues, the FDIC has no interest in this litigation. These arguments are addressed below.

      a.      <u>The characterization of the plaintiff's claims.</u>

In In re Southeast Banking Corp., 827 F.Supp. 742 (S.D. Fla. 1993), overruled on other grounds by, 69 F.3d 1539 (11th Cir. 1995), the court addressed many of the issues presented in the case now before this court. <u>In re Southeast Banking Corp.</u> involved a suit by the trustee of a bankrupt holding company against individual defendants who served as officers and directors of

6

both the holding company and its wholly owned subsidiary bank.[1] The FDIC argued that all of the claims were actually derivative actions. The trustee countered that the claims in the complaint were claims by the holding company against the defendants in their capacities as officers and directors of the holding company for duties owed to the holding company and not to the bank. 827 F.Supp. at 750.

First noting that "[w]hether a claim is considered direct or derivative is a matter of state law, and is determined from the body of the complaint rather from the label employed by the parties," (In re Southeast Banking Corp., 827 F.Supp. at 745), the court analyzed the substance of the claims in the complaint. The court concluded that the complaint was "substantially dominated by derivative allegations, rather than pleading distinct harm to [the holding company]." Id. at 746. In discussing any distinction between harms to the holding company and harms to the wholly owned bank, the court opined "[t]here is no meaningful distinction between injury suffered by the holding company and the derivative claims of mismanagement, especially where [the holding company's] solvency and success were 'crucially dependent' on the [b]ank." Id. at 746. The court allowed only those claims deemed non-derivative to continue; that is, claims involving the acquisition of two thrift institutions that occurred at the holding company level without regard to the management of or financial impact on the wholly owned subsidiary bank. Id.

A Florida bankruptcy court further addressed the issue of when claims brought ostensibly against the individual officers and directors of a holding company are actually derivative claims against the officers and directors in their capacities as fiduciaries of the wholly owned bank. See In re Bank United Financial Corp., 442 B.R. 49 (Bankr. S.D. Fla. 2010). In Bank United, a

---

[1] The court did not address the propriety of intervention in In re Southeast Banking Corp. However, the court addressed the arguments similar to those presented by Plaintiff in this case – that is, the claims were brought solely against the defendants in their capacity as fiduciaries of the holding company and that none of the claims were derivative in nature against the fiduciaries in their capacities as officers or directors of the failed bank.

7

bank and its parent holding company both failed. The holding company was the sole shareholder of the bank, the officers and directors of the bank and the holding company were identical, and each officer and director was a named beneficiary under a single Directors' and Officers' liability policy. The Holding Company sought to bring causes of action against the individual officers and directors in their capacities as fiduciaries of the holding company. The FDIC resisted, arguing any claims against the officers and directors were derivative claims that belonged to the FDIC.

Bank United noted that the individuals owed separate fiduciary duties to the holding company and to the bank. However, the court commented that "[t]he waters get muddied" when trying to determine in what capacity the individuals are being sued and whether their alleged improper conduct breached a duty to the bank, the holding company, or both. In re Bank United Financial Corp., 442 B.R. at 54. In attempting to determine how to separate such claims, the court relied upon the following factors:

> First, does the complaint state a cause of action for breach of fiduciary duty by the holding company officer or director to the holding company. Second, if the act or failure to act could also be viewed as a breach of duty to the subsidiary by the same person in his or her capacity as a director or officer of the subsidiary, is the injury alleged to have been caused by the breach one that could only occur at the parent level or is it a harm shared with, or occurring solely at, the subsidiary level. If the answer to either of these questions is "no," then the claim being pursued is a derivative claim. However, if the answer to both of these questions is "yes," then the claim is direct.

In re Bank United Fin. Corp., 442 B.R. 49, 58-59 (Bankr. S.D. Fla. 2010).

Based on the enunciated test, the court reviewed each of the claims proposed by the holding company against the directors and found claims that related directly to the failure of the bank were derivative and were owned by the FDIC. Id. at 60.

The plaintiff argues that FIRREA does not apply to this case because the litigation involves claims being brought by the Trustee of the TierOne Holding Company against some of its former officers and directors. The FDIC counters that the claims all ultimately involve disputes over the management and use of the assets of TierOne Bank, thus providing the FDIC with the necessary interest to intervene. The issue is further complicated by the fact that each of the individual defendants served a dual capacity – they were each officers and/or directors of both the TierOne Holding Company and the TierOne Bank.

While the court need not specifically adopt the test put forth in In re United Financial Corp., the court finds the reasoning of the Bankruptcy Court to be sound and persuasive. Where, as is the case here, the same individuals serve as directors of both the failed bank and the holding company and where the only business the holding company conducts is running the subsidiary bank, the court may look beyond the form of the pleadings to determine the true nature of the alleged causes of action against the officers and directors of the bank and holding company to determine if the FDIC has an interest in the action. Thus, Plaintiff's argument that the FDIC cannot have an interest in the litigation because the Complaint does not specifically mention any claims against the individual defendants in their capacity as directors of TierOne Bank is unavailing.

Although the First Amended Complaint is artfully drafted to avoid mentioning that the named defendants served as officers and directors of the TierOne Holding Company and TierOne Bank, the pleading is littered with factual allegations and causes of action that rely almost solely on claims of mismanagement of the Bank. For instance, the following claims all pertain directly to the operations of TierOne Bank:

- TierOne Defendants approved the opening and operation of a Las Vegas loan production office in December 2005. By the end of 2006, the Las Vegas loan production office

accounted for almost 30% of the nearly $3.7 billion loan portfolio of TierOne Bank. (Filing No. 23, ¶ 26 at CM/ECF p. 10).

- The TierOne Defendants violated their fiduciary duty to TierOne [Holding Company] by devising and implementing an unreasonable and high risk strategy which "threatened the existence of the primary corporate asset of TierOne [Holding Company] – TierOne Bank. (Id., ¶ 27 at CM/ECF p. 10).

- The TierOne Bank's loan portfolio became unreasonably concentrated in construction and land loans as a direct result of directives and policies promulgated by the TierOne Holding Company's officers and directors. (Id., ¶ 28 at CM/ECF p. 11).

- As a direct result of the actions and inaction of the TierOne Defendants, TierOne [Holding Company] began to experience significant and material loan losses resulting principally from losses of TierOne Bank in the loan portfolio. These losses, in turn, significantly diminished earnings and eroded capital of TierOne [Holding Company]. (Id., ¶ 30 at CM/ECF p. 11).

Plaintiff attempts to characterize each of these actions or inactions as failures of the defendants in their role as officers and directors of the TierOne Holding Company. However, it is clear the resulting "harm [was] shared with, or occur[ed] solely at, the subsidiary level." In re Bank United Fin. Corp., 442 B.R. 49, 58-59 (Bankr. S.D. Fla. 2010). That is, but for the harm that occurred causing the TierOne Bank to fail, the TierOne Holding Company would not have suffered any injury. According to the first amended complaint, the failure of the TierOne Bank, and subsequently the TierOne Holding Company, was a direct result of the loan programs enacted by TierOne Bank and existing in the TierOne Bank loan portfolio. Accordingly, at least a portion of the claims appear to be derivative in nature. See Vieria v. Anderson, case no. 2:11cv0055, 2011 WL 3794234, at *5 (D.S.C. Aug. 25, 2011) (finding claims against the dual

10

officers and directors of a holding company and wholly owned bank were derivative in nature and belonged to the FDIC where the harm done to the holding company was inseparable from the harm done to the bank); see also Levin v. Miller, case no. 1:11cv1264, 2012 WL 1982287, at *3 (S.D. Ind. June 1, 2012)(allowing the FDIC to intervene where certain claims raised by the holding company against dual officers of the holding company and bank did not allege harm distinct from the harm the bank experienced). The plaintiff's claims are better characterized as claims the TierOne Holding Company is trying to bring in its capacity as a shareholder against the individual defendants in their respective roles as officers and directors of TierOne Bank – not the TierOne Holding Company. Without ultimately determining which of the alleged claims belong to the FDIC, it is apparent many of the allegations relate specifically to the failure of the TierOne Bank and are not direct actions the TierOne Holding Company can bring against its officers and directors.

Plaintiff cites to an unpublished decision from the United States District Court Northern District of Georgia, (Patel et al. v. Patel et al., no. 1:09cv3684 (N.D. Ga., December 29, 2010)), in support of its contention that its claims implicate only the TierOne Holding Company. In Patel, the FDIC was not permitted to intervene in an action by shareholders of a holding company against certain officers and directors of that holding company. The holding company operated several banks and sold shares in the holding company as a way to raise capital for the bank. The shareholders sued the officers and directors alleging the shares were marketed through fraudulent and misleading Private Placement Memoranda. The court denied the FDIC's attempt to intervene holding that the FDIC had no interest in the claims of the holding company's shareholders against the holding company. However, the basis for the court's decision related specifically to the nature of the claims brought by the shareholders – claims against the officers and directors for the marketing and selling of the holding company's stock and not for the operation of the banks under the control of the holding company. That is, the allegedly misleading statements in the PPM were not directly attributable to the failure of the wholly owned banks. Accordingly, Patel is distinguishable from the instant case; specifically,

11

the vast majority of the harm Plaintiff alleges occurred as a direct result of the mismanagement and failure of the TierOne Bank.

Plaintiff also relies upon a case from the United States Bankruptcy Court Eastern District of New York, (In re First Central Financial Corp., 269 B.R. 502 (Bankr. E.D.N.Y. 2001)). This case stands for the basic proposition that claims against a holding company and claims against the holding company's wholly owned subsidiary are distinct. But In re First Central Financial Corp. did not involve the FDIC, applied New York state law, and noted that several of the claims were specific to the holding company. That is, the claims were independent of how the holding company operated its wholly owned subsidiary. In re First Central Financial Corp., 269 B.R. at 518. Thus, like Patel, the holding company shareholders had an independent cause of action against its officers and directors that was not entirely related to the operation of the Bank.

Finally, citing Lubin v. Skow, 382 Fed. Appx. 866, 870 (11th Cir. 2010), the plaintiff claims the FDIC has no interest in this litigation because the complaint specifically names the defendants in only their respective capacities as fiduciaries of the TierOne Holding Company. Lubin involved an attempt by the FDIC to intervene in a suit by the bankruptcy trustee for a holding company against its failed subsidiary bank and individual defendants in their capacities as officers and directors of the holding company. The holding company raised funds to capitalize the bank through various equity offerings. Due to its concentration of commercial real estate loans, the bank and the holding company both filed for bankruptcy. The trustee for the holding company brought suit against the defendants claiming their lending strategy put the equity interests of the holding company's stockholders at risk. The trustee further asserted the holding company and its stock holders "had and have direct equitable, if not legal, interests in the business practices, proper management, and profits of the Bank." Id. at 879. The FDIC intervened in the action and moved to dismiss the plaintiff's claims for lack of standing and

12

failure to state a claim. The FDIC argued that all of the claims asserted against the officers and directors belonged to it and not the bankruptcy trustee for the holding company.

Noting that FIRREA does not apply where the "Trustee is suing to vindicate the rights of the [h]olding [c]ompany against its own officers" to support its arguments, (Id. at 872, n. 9), the court expressly dismissed claims brought by the holding company against its officers "[b]ecause the Complaint fails to plead sufficient facts connecting any act or omission by the defendants with a harm to the [h]olding [c]ompany that is distinct from the harm the [h]olding [c]ompany suffered when its investment in the [b]ank soured . . . ." Id. at 873. Lubin does not support the Trustee's argument that the FDIC has no protectable interest at issue in this case..

Upon review of the facts and the authorities cited by the parties and herein, the court finds that the Amended Complaint alleges numerous claims which are directly linked or dependent on the failure of the TierOne Bank, the FDIC clearly has a direct, legal and substantial interest in this case for the purposes of Fed. R. Civ. P. 24.

      b.    <u>The derivative nature of the plaintiff's claims.</u>

The plaintiff argues that even if its claims are characterized as shareholder claims, they are not derivative but are direct claims belonging to the TierOne Holding Company against the named defendants. Whether a claim is direct or derivative is a matter of state law. Under Nebraska law "a shareholder may not bring an action in his or her own name to recover for wrongs done to the corporation or its property." Freedom Financial Group v. Woolley, 280 Neb. 825, 832, 792 N.W.2d 134, 140 (2010). A shareholder may pursue a direct claim in his or her individual capacity if the shareholder can establish an individual cause of action. Id.

> In order to establish an individual harm, the shareholder must allege a separate and distinct injury or a special duty owed by the party to the individual shareholder. Even if a shareholder establishes that there was a special duty, he or she may only

13

> recover for damages suffered in his or her individual capacity, and not injuries common to all the shareholders.

Id.

In this case Plaintiff cannot establish either a "special duty" owed to it by the named defendants or any damages it suffered that would not have been common to any other shareholders. Simply put, Plaintiff is alleging damages it experienced due to the diminution in value of its investment in the TierOne Bank. A diminution in value is a claim that belongs to the corporation and not the individual shareholder. Myerson v. Coopers & Lybrand, 233 Neb. 758, 763-64, 448 N.W.2d 129, 134 (1989). "Even though all shares of stock of a corporation may be owned by a small number of shareholders or by one shareholder alone, a shareholder cannot sue individually concerning rights which belong to the corporation." Myerson, 233 Neb. at 765, 448 N.W.2d at 135.

Plaintiff argues the individual defendants owed the TierOne Holding Company a "special duty." But what the Trustee describes as a "special duty" is simply the ordinary fiduciary duty owed to the TierOne Holding Company by the defendants as the TierOne Holding Company's officers and/or directors. To assert the type of "special duty" necessary to overcome the derivative claims asserted in this action, the Trustee must prove that the named defendants, as officers and/or directors of the TierOne Bank, owed the TierOne Holding Company, as the sole shareholder of the TierOne Bank, a "separate and distinct" duty from a duty it would have owed any other shareholders. See Freedom Financial Group, 280 Neb. at 8333-34, 792 N.W.2d at 141. The claims of mismanagement of the TierOne Bank do not implicate any "special duty" as defined by Nebraska law, accordingly any claims attributable to the TierOne Holding Company based on its status as a shareholder of the TierOne Bank are derivative in nature.

### 3. FDIC's interest may be impaired.

The next prong of the mandatory intervention analysis concerns whether the FDIC has the ability to protect its interest if it is not allowed to intervene in this litigation. The FDIC, as the trustee of TierOne Bank's bankruptcy estate, has an obligation to maximize TierOne Bank's assets for the receivership estate. TierOne Holding Company and TierOne Bank apparently share a Directors and Officers liability insurance policy. The limit on the policy is purported to be $15 million. The FDIC obviously has an interest in recovering as much of the policy as it can. Moreover, the FDIC is asserting that several of the claims brought by the Trustee are actually claims that belong to the FDIC as receiver for TierOne Bank. Thus, any rulings regarding the individual defendants' alleged breach of fiduciary duties in managing TierOne Bank and its loan portfolio may also affect the FDIC's interest. If it is not allowed to intervene in the matter, its interests in these claims may be impaired. See, e.g., Kansas Public Employees Retirement System v. Reimer & Koger Associates, Inc., 60 F.3d 1304, 1307 (8th Cir. 1995) (requiring only a showing that the proposed intervenor's interest may be impaired, not that it undoubtedly would be impaired).

### 4. FDIC's interest is not adequately protected.

"[P]ersons seeking intervention need only carry a 'minimal' burden of showing that their interests are inadequately represented by the existing parties." Union Elec. Co., 64 F.3d at 1168. In this case there is little question that Plaintiff will not adequately represent the FDIC's interest in this litigation. The FDIC seeks to establish that many of the claims brought by Plaintiff belong, in fact, to the FDIC. In this respect, not only will the plaintiff not adequately represent the FDIC's claims – it is opposed to the FDIC's interests. In addition, the parties are also competing for the $15 million of liability insurance coverage shared by TierOne Bank and TierOne Holding Company. The FDIC has an interest in recovering any award granted due to the malfeasance of TierOne Bank's officers and directors for the benefit of TierOne's creditors.

The TierOne Holding Company, and obviously the defendants, will not adequately represent this interest.

### B.     Permissive Intervention

Even if a party cannot meet its burden of proof regarding mandatory intervention, the court has discretion to allow intervention nonetheless.  Under Rule 24(b) of the Federal Rules, a court may allow permissive intervention when the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B). However, the court must consider whether allowing permissive intervention "will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

The Trustee asserts allowing the FDIC to intervene would be futile and would unduly prejudice and delay the proceedings.  The Trustee argues "[t]he sole reason for which the FDIC-R has sought to intervene . . . is to file a declaratory judgment complaint seeking a determination that the causes of action asserted by the Trustee against the TierOne Defendants belong exclusively to the FDIC-R."  (Filing No. 51 at CM/ECF p. 25).  The Trustee asserts such a claim would not survive a motion to dismiss and thus would be futile.  The court disagrees.  For all the reasons set forth in Section A(2)(a) of this opinion, the court cannot agree that any declaratory action filed by the FDIC would necessarily be dismissed on the pleadings.

Moreover, there are undoubtedly common questions of law or fact with regard to how the individual defendants exercised their respective duties in managing TierOne Bank.  The FDIC should have the opportunity to assert its rights over the claims it believes belong to it under FIERRA. While further action by the FDIC may delay the proceedings, the delay would not prejudice the parties, particularly if the FDIC seeks a ruling to clarify which party can assert certain claims against the defendants.  Accordingly, the FDIC should be allowed to intervene as a matter of discretion.

IT IS ORDERED:

1) The FDIC's motion to intervene is granted. The FDIC shall file its proposed claim for declaratory relief, (Filing No. 39-1), on or before December 3, 2012.

2) The FDIC's response to the Motion to Compel Arbitration and Dismiss Plaintiff's First Amended Complaint (Filing No. 42) is due on or before December 10, 2012. Any reply shall be filed by December 20, 2012.

Dated this 20th day of November, 2012.

> BY THE COURT:
>
> *s/ Cheryl R. Zwart*
> United States Magistrate Judge